FRANK J. DURKIN LUMBER COMPANY, APPELLANT, v. GEORGE FITZSIMMONS, RECORDER OF THE TOWN OF BELLEVILLE, AND THE TOWN OF BELLEVILLE, RESPONDENTS.

Argued May 3, 1929—Decided October 14, 1929.

For the appellant, *James Larkin Hughes* and *Merritt Lane.*

For the respondent, *John B. Brown.*

The opinion of the court was delivered by

CASE, J. This case comes up on an appeal from a judgment of the Supreme Court affirming a conviction of the appellant for violation of the provisions of a zoning ordinance of the town of.Belleville; the proceedings having been brought before that court on a writ of *certiorari.* The alleged offense, as charged in the complaint, consisted of unlawfully using, on specified days between March 1st and 13th, inclusive, 1928,

certain premises as a building material storage yard, contrary to the ordinance which prohibited such use in that area; and further, contrary to the ordinance, of occupying and using the premises as aforesaid without first having secured a certificate of occupancy from the superintendent of buildings therefor. The conviction appears to include two subsequent days, namely, March 16th and 19th, 1928, a discrepancy that is apparently disregarded.

The lands of the appellant are peculiarly situated. They are, in shape, an oblique quadrangle, bisected on the north and west by the boundary line that separates the towns of Bloomfield and Belleville. and therefore the lands lie partly in each of these municipalities. The Bloomfield portion is zoned for industries; the Belleville portion is zoned as an "A" residence section. Appellant's office building, from which its lumber business is conducted, is on the Bloomfield side. There are no buildings or structures on the Belleville portion, the only use made of the last mentioned lands being for the piling and storing of lumber, not nearer Belleville avenue, however, than approximately one hundred and eighty feet. The main frontage is on Belleville avenue, one hundred and five feet in Bloomfield and sixty-nine feet in Belleville. Measured by square feet of area, the conditions are reversed and the much larger portion lies in Belleville. Furthermore the Belleville portion has, and the Bloomfield portion has not, railroad frontage and railroad facilities. Use of the Belleville land is necessary to enable the owner to conduct his business.

Geographically, the conditions of the Belleville land are these: On the south, for the entire rear width of the tract, namely, two hundred and seventeen feet, runs the Greenwood Lake division of the Erie Railroad; beyond which is the combined office and home of a man engaged in the trucking business, as is also his three-car garage used to house his five and seven-ton trucks. To the east of the rear of the lands, at a distance of between six hundred and a thousand feet, along the railroad, is the considerable factory plant of the National Grain and Yeast Company; adjoining and paralleling the railroad is an unbuilt and undeveloped space

apparently reserved for a street; paralleling which and farther north is a residence street, Smallwood avenue, which swings at right angles, as it nears appellant's property, into Pleasant avenue. Between appellant's east line and Pleasant avenue there are no structures except a real estate office. To the north of appellant's property is Belleville avenue, on the far side of which are extensive greenhouses—characteristic glass structures—beside which is a high roadside sign advertising the establishment as the "Mountain Pink Nursery." To the west is the town of Bloomfield, zoned "industrial;" except for a gore at the rear where the lands of a chemical plant extend into Belleville and bind on the appellant's west line.

The Belleville ordinance was adopted September 4th, 1923, and, not in terms but by excluding all uses except those specifically enumerated, prohibited the use of so much of appellant's lands as lie within the limits of the municipality for the storage of building materials or for the operation of a lumber business. In or about the month of March, 1926, appellant bought the entire tract as a unit and, without authority from the municipality, proceeded to use the Belleville lands for the piling and storage of lumber incidental to the business conducted from the buildings situated in Bloomfield. We consider, however, that such piling and storage of lumber was an essential part of the business and was, to that extent, the conducting of that business in the affected area. In other words, the use did not conform to the ordinance. It was a non-conforming use. Was the use, at its inception, therefore, unlawful? That depends upon whether or not the ordinance was lawful in its prohibition; and we shall first consider the law as it was prior to the zoning amendment, and then in the light of that enactment.

The ordinance was adopted in what the town authorities conceived was a compliance with the provisions of the Municipalities act. *Pamph. L.* 1917, *ch.* 152, as amended and supplemented, *Pamph. L.* 1920, *ch.* 240, and *Pamph. L.* 1922, *ch.* 162. That legislation and an ordinance passed thereunder were considered by this court in *State* v. *Nutley*, 99 *N. J. L.* 389. It was therein held (Chief Justice Gummere) that "the

legislature in its grant of power to the several municipalities of the state to regulate the use to which a property owner may put his property, even to the extent of prohibiting its use for a particular purpose, limited that power by the provision of the statute that such regulation must 'be designed to promote the public health, safety and general welfare.' If, therefore, the ordinance, in its application to the property of any particular owner, does not come within the limitation of the statute, to that extent it is without legal justification and void." The reasoning of the case clearly demonstrated and the opinion concisely held that the ordinary use of property is not authorized by the general welfare clause of the statute to be prohibited because repugnant to the sentiments or desires of a particular class residing in the immediate neighborhood thereof, but only because such use is detrimental to the interests of the public at large; "that the restriction authorized by this provision of the statute upon the untrammeled use of property for promotion of the general welfare of the community must be such as will tend in some degree to prevent harm to the public generally or to promote the common good of the whole people of such community." On this point the main argument presented by respondents in the instant case is that of an alleged fire hazard, and this argument becomes unconvincing when the circumstances of the neighborhood, the arrangements on the appellant's property, and the fact that the ordinance does permit the disputed use in the business zone, are considered in the light of the opinions in *Ingersoll* v. *South Orange,* 102 *Id.* 218; *Rudensey* v. *Montclair,* 3 *N. J. Mis. R.* 335; 4 *Id.* 103;, and *Karke Realty Associates* v. *Jersey City,* 104 *N. J. L.* 178. Respondents refer to chapter 146 of the laws of 1924 in support of the lawful application of the ordinance; but that statute was reviewed by this court in *Krumgold* v. *Jersey City,* 102 *Id.* 170, and the principle stated in the Nutley case upheld. As matters stood in March, 1928, it had been clearly enunciated that a prohibitive ordinance, to be within the law, must be in very definite and substantial relationship to the safety, health, morals or general welfare of the community.

It seems redundant to repeat the reasoning, the applications or the illustrations of the cited cases. Sufficient to say that the prohibition in controversy did not have that relationship. We reach the conclusion therefore, that in March, 1928, when the use began, the ordinance, so far as it prevented the use of appellant's property for the purpose to which the property was actually put, was not authorized by the statute under which it purports to have been adopted and to that extent was null and void. It has long been proper practice for a party charged with violation of a municipal ordinance to object, in a penal action thereon, to the validity of the ordinance and in that mode place before the court the limited question whether the ordinance is not a nullity in that particular instance. It was so held by Chief Justice Beasley in *Pennsylvania Railroad Co.* v. *Jersey City,* 47 *Id.* 286. To the same effect are *Gaslight Co.* v. *Rahway,* 58 *Id.* 510; *Hamble* v. *Asbury Park,* 61 *Id.* 502. Consequently, had the present issue been presented to this court prior to the 1927 constitutional amendment and the accompanying statute of 1928, the ordinance in its immediate application would have been declared a nullity and the disputed use lawful. The inescapable conclusion is that during the period beginning March, 1928, and until the just mentioned constitutional and statutory changes the use was lawful.

It was charged that in addition to violating the prohibition of the ordinance against a forbidden use the appellant also violated a provision requiring him to procure a so-called "certificate of occupancy"—a paper to be issued by the superintendent of buildings certifying that the premises complied with all the provisions of the ordinance. Manifestly the premises did not comply with the ordinance. No person could certify that they did and no court mandate could reasonably issue to compel an official to certify to a falsehood. The right to require a certificate of occupancy, in the case before us, stands or falls with the right to prohibit the character of occupancy.

It remains to consider whether the amendment to the constitution adopted in 1927, known as the zoning amendment,

and the ancillary legislation (*Pamph. L.* 1928, *ch.* 274), alter the result thus reached.

On October 18th, 1927, the people, at a special election, adopted a constitutional amendment providing that—"The legislature may enact general laws under which municipalities, other than counties may adopt zoning ordinances * * *." By its terms this constitutional provision was to become effective, within its scope, only if, when, and as the legislature should enact. The anticipated statute was passed and approved April 3d, 1928, as chapter 274 of the laws of that year. The alleged ordinance violations occurred in the early part of March, 1928, and were, therefore, at the time of their occurrence, not unlawful. Did the 1928 statute, by retrospective application, make them unlawful? It is to be borne in mind, without accentuating the penal character of the proceeding under review (*Marter* v. *Repp,* 80 *N. J. L.* 530; *affirmed,* 82 *Id.* 531), that it is "a familiar and important principle, always to be kept in mind in the construction of statutes, that they are not to be given a retrospective effect or operation if their language reasonably admits of another construction." *Frelinghuysen* v. *Morristown,* 77 *Id.* 493. It is also to be remembered that the use of property is one of the essential attributes of ownership. Ownership without use is fatuous. True, every owner holds his property subject to the implied condition that it will not be used for the injury of others and also subject to a degree of municipal control in the interest of the common good. But if use is an attribute of property, may a municipality, without making compensation, estop an owner from continuing a use that is in actuality, that was begun and continued lawfully, and that becomes unlawful only because the municipality has so ordained? With respect to the construction of buildings the rule was established in *Rohrs* v. *Zabriskie,* 102 *Id.* 473; and approved in *Koplin* v. *South Orange,* 6 *N. J. Mis. R.* 489, that a writ of *mandamus* being discretionary, there can be no vested rights that control the exercise of that discretion, unless a permit is issued and work is actually commenced thereunder. Recog-

nizing that the granting of a permit and the subsequent beginning of work thereunder do clothe the owner with certain rights against municipal interference this court very recently, in two instances, refused a municipality the privilege of revoking a permit theretofore given. Saline Freeman *v.* Frank Hague et al.; Lehigh Valley Railroad Company *v.* Mayor and Aldermen of Jersey City et al. It seems that a logical application of the same principle is to recognize the right to continue, as against subsequent zoning interference, a use that was actually instituted, that was lawful when instituted and that has been actively and constantly maintained. We consider that the statute does precisely that.

The statute clearly preserves the right, as against a zoning ordinance, to continue a use lawful at its inception. Section 11 provides that "any non-conforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the building so occupied." Section 7 provides that "whenever any municipality shall have adopted an ordinance, or ordinances, prior to the adoption of this act, for any of the purposes set forth in this act, such ordinance, or ordinances, shall continue in effect *as if they had been adopted under the provisions of this act."* We do not read into that language a retrospective intent. The statute does not give to an existing ordinance the strength to reach back of the date of the statute and create offenses *nunc pro tunc.* Section 3 authorizes municipalities to pass zoning ordinances within the larger field authorized by the constitutional amendment, and section 7 merely saves the municipality from the unnecessary machinery of a reenactment where there is an existing ordinance. Such ordinance is made to continue in effect "as if * * * adopted under the provisions of this act." It could not, certainly, be adopted under the provisions of the act prior to the passage thereof. For such extension of power and breadth as depends upon the statute the ordinance became effective contemporaneously with the statute, namely, April 3d, 1928, as though adopted on that date. An issue of this reasoning is

that inasmuch as the disputed use of appellant's premises was then in progress, and had been since March, 1926, and at its inception and constantly until April 3d, 1928, had been lawful, it was, under section 11 of the statute, a nonconforming use entitled to be lawfully continued. The title of the act is consistent with this view and almost necessarily leads thereto. It reads thus: "An act to enable municipalities to adopt zoning ordinances limiting and restricting to specified districts and regulating therein buildings and structures, according to their construction, and the nature and extent of their use, and the repeal of sundry zoning laws." The aspect of the title is toward the future; nothing therein suggests the giving of retroactive effect to an existing ordinance. We conclude that the statute is not retrospective and that such life as was given by it to the ordinance under review was congenital with and did not antedate the statute. The conviction under review was erroneous inasmuch as the acts complained of occurred in March, 1928, when there was no legal authority for an ordinance prohibition. Had the dates assigned to the alleged violations been subsequent to April 3d, 1928, when the statute was approved, the use would still have been lawful as a continuing nonconforming use under section 11.

In so finding we in no way impair the principle stated in *Koplin* v. *South Orange, supra.* That proceeding was on rule to show cause why a writ of *mandamus* should not issue commanding the issue of a building permit. It was held that because the writ of *mandamus* was discretionary and no vested rights were involved, the court did not deem it a proper exercise of discretion to compel the building inspector to issue a certificate that, under the law as it then was, he was justified in refusing. The question now before us is the legality of a conviction that involves a penalty and the termination of property rights actually and lawfully in use. We perceive a sharp distinction between the issues. The litigants herein are entitled, we think, to have the pertinent law established.

The judgment of the Supreme Court is reversed. Let the record be remitted to the end that the conviction of th appellant before the recorder be set aside.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, PARKER, KALISCH, LLOYD, CASE, BODINE, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 12.