MORTGAGE AND INVESTMENT COMPANY OF NEW JERSEY, complainant-respondent,

*v.*

ROMEL REALTY COMPANY, defendant-appellant.

[Submitted October 25th, 1929. Decided May 19th, 1930.]

*Mr. Jason R. Elliott,* for the appellant.

*Mr. George H. Richenaker,* for the respondent.

The opinion of the court was delivered by

PARKER, J.

This is a suit for the foreclosure of a purchase-money mortgage made by the defendant corporation to Steenland Construction Company and assigned to the complainant-respondent. Defendant set up in the answer and counterclaim that it was induced to take the deed and make the mortgage by fraudulent misrepresentations of the Steenland company that the lands were immediately available for building apartment houses, which was contrary to the fact; that in consequence the lands conveyed are worth much less than the amount for which they were sold, and the counter-claim prays that the mortgage be reduced by the amount of such difference and that proper rebate of interest be made. The advisory master held, in effect, that whatever representations had been made, the purchaser had not been misled thereby, and that in any event such purchaser had later and with full knowledge elected to retain the property and had made one or more payments of interest and one of principal without any demur. He advised a decree for the balance of the mortgage and interest.

The property consists of building lots, part of which were sold at an auction sale May 14th, 1927, at the instance of the Steenland company, and part purchased a few days later by private contract based on the terms of the auction sale. The purchasers were the present counsel for appellant, and a business associate of his who was skilled in real estate matters. They two organized the defendant corporation, which received the deed and made the mortgage.

The claim of misrepresentation was two-fold. First, that the Steenland company held under a deed from the executors of an estate, in which deed were contained certain restrictions expiring by limitation on April 28th, 1930, but then in force; and secondly, that by an ordinance of the city of Englewood where the property is situate, there is and there was a prohibition of apartment houses on the property.

As to the first point: The power given to the executors was a general one to sell, &c., at any time within five years from the testator's death. They sold within the five years, inserting the restrictions in the deed, although, so far as appears, there was nothing in the will requiring them to do so. After the five years had expired, the Steenland company paid, and the executors accepted, the sum of $15,000 as consideration for a supplemental deed releasing the property from the restrictions, and over the written protest of one of the beneficiaries who, as observed by the advisory master, has not indicated a desire that the money be returned at the expense of herself or of the estate. The master held on the authority of *Marsh* v. *Love, 42 N. J. Eq. 112; Chasmar* v. *Bucken, 37 N. J. Eq. 415,* and *Molten* v. *Sutphin, 66 N. J. Eq. 20,* that the power was properly exercised after the five years holding that the provision of the will relating to the five years was merely directory. For reasons presently to be stated, we find it unnecessary to pass on this point, particularly as the restrictions have now expired by limitation and the question for the future at least is academic.

As to the second point: There can be little doubt that the advertisements of the sale, which were widely distributed, and on which the original purchasers probably relied as an induce-

ment to attend the sale and bid, were of a character to give the impression that there was no restriction, created either by deed or by zoning ordinance, which would prevent the erection of apartment houses on the property. Even the fact that it was stipulated in the conditions of sale that "the deed * * * shall be subject * * * to all zoning laws now existing in the city of Englewood" might not suffice to put a purchaser on notice of a zoning restriction against apartments in the face of an express representation that no such restriction existed. But the zoning restriction itself was invalid as a matter of law, and the subsequent history of the matter shows clearly a waiver of any right to claim relief because of either restriction. Particularly with respect to that in the zoning ordinance, the sale was in May, 1927, the discovery by Mr. Elliott of the zoning restriction was at some time in July. At that date, as our law reports will show, the right to build apartments as against a zoning restriction was being generally enforced by *mandamus*. *Jersey Land Co. v. Scott, 100 N. J. Law 45; H. Krumgold & Sons, Inc., v. Jersey City (1927), 102 N. J. Law 170; Losick v. Binda (1925), 102 N. J. Law 157; Eaton v. South Orange (1925), 3 N. J. Mis. R. 956; affirmed, 103 N. J. Law 182; Robert Realty Co. v. Orange (1927), 4 N. J. Mis. R. 912; 103 N. J. Law 711; Karke Realty Associates v. Jersey City, 104 N. J. Law 173.*

Consequently, at the time of the sale, the zoning restriction against apartments in Englewood was legally ineffective and the liability of the property to be lawfully subjected to such a restriction was dependent on the adoption by popular vote of the constitutional amendment relating to zoning. *P. L. 1927 p. 818.* The election had not taken place. That Mr. Elliott and his associates recognized this situation is plain from the fact that, after giving notice on July 15th, of refusal to make further payments till restrictions should be removed, they made an agreement with other purchasers at the same sale and with the Steenland company, looking toward negotiations with the local authorities for a permit for building notwithstanding the ordinance. If action had

been forced in the matter, the right to build apartments would have been properly settled. But the point now to be noted is, that at the time of the sale there was no actual valid inhibition of apartments, but only an apparent one on the face of an ordinance invalid in that regard. As it turned out, the constitution was amended in the following September; the courts thereupon ceased to award writs of *mandamus;* and in 1928 a new statute based on the constitutional amendment validated, from that time only, the pre-existing ordinances. *Frank J. Durkin Lumber Co.* v. *Fitzsimmons, 147 Atl. Rep. 555.* In the meantime the defendant had not definitely taken any final stand, either to repudiate the transaction, or force a test case to a conclusion, or revise the purchase price by abatement in amount. On August 1st, 1927, the mortgage was assigned to the present complainant (respondent on this appeal). Nothing was done about the zoning matter until after the due date of a payment of interest and installment of principal, September 14th, and the special election, September 20th, at which election the constitutional amendment was adopted by popular vote. Shortly after this, on October 6th, a meeting was called by the Steenland Construction Company by written notice addressed to appellants and pursuant to an "agreement entered into on July 19th, 1927, relating to the permit for which Messrs. Eypper & Beckman had applied." The meeting apparently did not take place. On October 13th the complainant pressed for the payment due on September 14th, and Elliott answered that unless the board of adjustment should decide favorably at its meeting to be held on the 18th, his client would consider a suit for rescission and in the meantime no payment would be made. On November 25th the counsel for respondent wrote, threatening foreclosure; and on December 3d Elliott acknowledged this letter and a previous one of November 9th, which is not laid before us, and while negativing any claim of intentional misrepresentation and suggesting that the "situation can be amicably adjusted," stated that payments would be deferred until after a personal conference. The next fact appearing is that on December

14th, Elliott, or the appellant, sent a check for the first installment of five per cent. of principal and interest to September 14th, three months overdue. The second payment was due on that very day. On January 28th, 1928, respondent's counsel wrote, calling attention to default in the December 14th payment. The printed case shows no further correspondence until April 28th. In the meantime, the new zoning statute had taken effect April 3d. *P. L. 1928 p. 696.* Elliott's letter of April 28th tenders back the property and demands a rescission of the sale and repayment of moneys paid thereon. The state of the case does not show the date of filing the foreclosure bill as required by rule 19 of this court, nor date of filing answer, but the case was referred to the advisory master on November 13th, 1928.

The law is, of course, settled that a right to rescind for fraud or misrepresentation must be exercised promptly after discovery of the facts, and that delay, and particularly the making of a payment after such discovery, are important evidence of an intent not to rescind, but to abide by the contract. *Dennis* v. *Jones, 44 N. J. Eq. 513; Clampitt* v. *Doyle, 73 N. J. Eq. 678; Reed* v. *Benzine-ated Soap Co., 81 N. J. Eq. 182.* There is no attempt to obtain a rescission in this case, doubtless because of the authority of this line of cases. The defendant stands on the conveyance, and claims damages, not on any covenant against encumbrances therein contained, as in *Kuhnen* v. *Parker, 56 N. J. Eq. 286,* but because of alleged misrepresentation preceding and inducing the purchase. Such a claim may not be asserted, as a matter of practice, by way of answer, but may be asserted by cross-bill, or under our present practice, by counter-claim. *O'Brien* v. *Hulfish, 22 N. J. Eq. 471.* However, following a similar line of reasoning to that relied on in the cases holding that an election to rescind must be exercised promptly, we are of the opinion that under the circumstances of this case as outlined above, the appellant, as assignee of the rights of the purchasers at the sale certainly stands in no better position than they, and that both the original purchasers and the defendant have waived by their conduct any claim of damages for fraudulent

misrepresentation on account of a zoning restriction which at the time of the sale in May, and of the deed and mortgage in June, and for several months thereafter existed only on paper and was in effect merely an apparent cloud on the title which would have been promptly removed at the instance of an intending builder, by peremptory *mandamus*. In this aspect defendant's claim stands little better, if at all, than if at the time of sale a zoning ordinance constitutionally valid had been in contemplation but not enacted. After knowledge of the apparent unavailability of the property for apartment purposes, defendant busied itself, not in tendering back the property, not in asserting by prompt filing of a bill in chancery a claim for reduction of the mortgage, but in attempts at negotiation with the city authorities and by the time such negotiations had definitely failed it was too late to take effective proceedings to override the ordinance. So that, apart from the rather serious question whether defendant as assignee of the contract of purchaser or perhaps a mere nominee of Elliott and Romaglia, would be entitled to assert by bill or cross-bill a claim for damages applicable to the principal of its mortgage and in flat contradiction to the clause in the deed subjecting the property to the zoning ordinance (*27 C. J. 6*) we deem that the conduct of the defendant indicates a waiver, not only of the question whether the restriction in the executors' deed had been eliminated—which seems to be not seriously pressed now—but also of the right to assert a damage claim in equity for partial failure of consideration due to the existence of a zoning ordinance, which, as we have said, was not then legally effective. Such conduct, in the language of *Clampitt* v. *Doyle, supra,* "amounts to satisfactory evidence of an election to stand by the contract notwithstanding the fraud."

The decree under review will therefore be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, BLACK, CAMPBELL, LLOYD, CASE, BODINE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, WELLS, JJ.   14.

*For reversal*—None.