593 A.2d 1264

RAZBERRY'S, INC., PLAINTIFF-APPELLANT, v. KINGWOOD TOWNSHIP PLANNING BOARD AND RICH–HIL TRANS-PORTATION, INC., DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued March 20, 1991—Decided August 7, 1991.

Before Judges SHEBELL, HAVEY and SKILLMAN.

*David Vaida* argued the cause for appellant.

*Brian J. Mulligan* argued the cause for respondent, Kingwood Township Planning Board (*Hannoch Weisman*, attorneys; *Brian J. Mulligan, Peter A. Buchsbaum* and *David A. Larkin*, on the brief).

*Robert F. Danziger* argued the cause for respondent, Rich-Hil Transportation, Inc. (*Large, Scammell & Danziger*, attorneys; *Robert F. Danziger*, on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

The issue presented by this appeal is whether a property owner may subdivide a lot occupied by a nonconforming use, thereby reducing the size of the property devoted to that use, without obtaining a use variance pursuant to *N.J.S.A.* 40:55D-70d(2).

Defendant Rich-Hil Transportation, Inc. (Rich-Hil) is the contract purchaser of a 5.17 acre part of a U-shaped 8.17 acre parcel of land located in Kingwood Township. The property is located in a commercial district but is occupied by the contract seller's residence, which is a valid nonconforming use.

Rich-Hil submitted an application for minor subdivision approval to defendant Kingwood Township Planning Board, proposing to divide the existing lot into two new lots, one of which would be retained by the contract seller for her residence and

the other of which would be conveyed to Rich–Hil to be used for some form of commercial development. Since the lot to be occupied by the contract seller's residence would consist of only three acres and the minimum lot size in the zone is five acres, Rich–Hil also applied under *N.J.S.A.* 40:55D–70(c)(1) for a hardship variance to authorize creation of an undersized lot. However, Rich–Hil did not apply for a use variance to authorize the lot to be occupied by a residence.

The Planning Board granted Rich–Hil's applications for the subdivision and hardship variance. Plaintiff Razberry's, Inc., the owner of an adjoining property, then brought an action in lieu of prerogative writs challenging the Planning Board's action. Plaintiff contended among other things that Rich–Hil's development plans would result in an intensification of the nonconforming residential use and consequently that a use variance was required. The trial court rejected this argument as well as plaintiff's other arguments and dismissed its complaint.

We are persuaded by both the language of the Municipal Land Use Law authorizing the continuation of preexisting nonconforming uses and the underlying legislative objective to bring nonconforming uses into conformity as quickly as possible that a use variance is required to continue a nonconforming use when the size of the property containing the use is reduced by a subdivision. Accordingly, we reverse the judgment dismissing the complaint and set aside the resolution of the Planning Board granting Rich–Hil's application for subdivision approval and a hardship variance.

*N.J.S.A.* 40:55D–68 provides in pertinent part that "[a]ny nonconforming use ... existing at the time of the passage of an ordinance may be continued upon *the lot ... so occupied*" (emphasis added). A subdivision results in the creation of two or more new lots which take the place of the larger lot out of which they are formed. *Loechner v. Campoli*, 49 *N.J.* 504, 511, 231 *A*.2d 553 (1967). Therefore, when a lot occupied by a

nonconforming use is subdivided, a prerequisite of the lawful continuation of the use, its operation upon the same lot, no longer can be satisfied, and the property owner is required by *N.J.S.A.* 40:55D–70d(2) to obtain a use variance for "an expansion of a nonconforming use."

This interpretation of *N.J.S.A.* 40:55D–68 is supported by the underlying legislative policy regarding nonconforming uses, which is that "they should be reduced to conformity as quickly as is compatible with justice." *Town of Belleville v. Parrillo's, Inc.*, 83 *N.J.* 309, 315, 416 *A.*2d 388 (1980). "The method generally used to limit nonconforming uses is to prevent any increase or change in the nonconformity." *Id.* at 316, 416 *A.*2d 388. Although a property owner may make a negligible or insubstantial change in a nonconforming use without a use variance, "[w]here there is doubt as to whether an enlargement or change is substantial rather than insubstantial, the courts have consistently declared that it is to be resolved against the enlargement or change." *Ibid.*

The typical cases in which courts have found a prohibited increase or change of a nonconforming use have involved an expansion of the facilities containing the use, *see, e.g., Grundlehner v. Dangler*, 29 *N.J.* 256, 148 *A.*2d 806 (1959); *Ranney v. Istituto Portificio Delle Maestre Filippini*, 20 *N.J.* 189, 119 *A.*2d 142 (1955), or an intensification of the use, *see, e.g., Town of Belleville v. Parrillo's, Inc., supra; Hantman v. Township of Randolph*, 58 *N.J.Super.* 127, 155 *A.*2d 554 (App.Div.1959), *certif. denied*, 31 *N.J.* 550, 158 *A.*2d 451 (1960). However, a reduction in the size of the property occupied by a nonconforming use, with a resulting decrease in the buffers between conforming and nonconforming uses, is just as likely to increase the conflict between a nonconforming use and surrounding conforming uses as an expansion of the facility containing the nonconforming use or an intensification of that use. Therefore, a reduction in the size of the property occupied by a nonconforming use may result in a substantial increase in the nonconformity.

328 

The potential impact of a subdivision of property containing a nonconforming use may be illustrated by considering a nonconforming factory located in the middle of a fifty acre parcel in a residential zone. Despite the strong discordance between industrial and residential uses, the size of such a parcel would provide a substantial buffer and thus mitigate the detrimental impact of the nonconforming use upon the neighborhood. But if the parcel were subdivided into forty-five one acre residential lots surrounding a five acre lot on which the factory continued to operate, the buffers between the conforming and nonconforming uses would dramatically decrease and the detrimental impact of the nonconforming use would become more severe. Nevertheless, if Rich–Hil's position were correct, the property owner could implement this change of the nonconforming use without obtaining a use variance. In fact, if the proposed subdivision complied with the minimum lot size and other bulk requirements of the zoning ordinance, the property owner would not even have to apply for a hardship variance but rather could proceed simply by obtaining subdivision approval. In our view, the recognition of a property owner's right to continue a nonconforming use under these circumstances would be inconsistent with the Supreme Court's directive that "the focus in cases such as this must be on the quality, character and intensity of the use, viewed in their totality and with regard to their overall effect on the neighborhood and the zoning plan." *Town of Belleville v. Parrillo's, Inc., supra,* 83 *N.J.* at 314, 416 *A.*2d 388; *cf. Urban v. Planning Board of Manasquan,* 124 *N.J.* 651, 592 *A.*2d 240 (1991).

The impact of Rich–Hil's subdivision upon the nonconforming use which occupies the subject property would be less substantial than in the hypothetical situation discussed in the preceding paragraph, and indeed the rather odd shape of the lot and the other circumstances identified by the Planning Board may justify a finding of "special reasons" required for the grant of a use variance. However, even if the extent of a decrease in the size of property containing a nonconforming use could be

considered notwithstanding the literal language of *N.J.S.A.* 40:55D–68 discussed earlier (*infra* at 326–27), we would be unable to say that a reduction in the size of property occupied by a nonconforming use from more than eight acres to only three acres is so negligible or insubstantial that a use variance is not required.[1]

Accordingly, we reverse the judgment of the Law Division dismissing the complaint and set aside the Planning Board's resolution granting Rich–Hil's application for subdivision approval and a hardship variance.

---

[1]We do not pass upon the question whether a subdivision resulting in a *de minimus* reduction in the size of a lot would require a use variance. *Cf. Town of Belleville v. Parrillo's, Inc., supra.*