26 A.3d 418 (2011)
208 N.J. 95
Donald NUCKEL; North Village I, L.L.C.; and North Village II, L.L.C., Plaintiffs-Appellants and Cross-Respondents,
v.
BOROUGH OF LITTLE FERRY PLANNING BOARD, Defendant-Cross-Respondent,
The General's Group, L.L.C. and FTA Realty, L.P., Defendants-Respondents and Cross-Appellants.
No. A-3/4 September Term 2010 066096.
Supreme Court of New Jersey.
Argued January 5, 2011.
Decided June 16, 2011.
*419 John J. Lamb, argued the cause for appellants and cross-respondents (Beattie Padovano, attorneys; Mr. Lamb, Ira E. Weiner, and Daniel L. Steinhagen, Montvale, on the briefs).
Andrew T. Fede, Hackensack, argued the cause for respondents and cross-appellants (Herten, Burstein, Sheridan, Cevasco, Bottinelli, Litt & Harz, attorneys).
Brian T. Giblin, Oradell, argued the cause for cross-respondent (Giblin & Giblin, attorneys).
Justice LONG delivered the opinion of the Court.
The primary issue on this appeal is whether a developer who proposes to place a driveway on an undersized lot that houses a nonconforming use, to service a hotel on an adjacent lot, is required to obtain variances under the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, specifically N.J.S.A. 40:55D-70(d)(1) and (2). Because the proposed driveway is not an accessory use under the relevant zoning ordinance, it constitutes a second principal use, prohibited by the zoning ordinance, thus requiring a use variance under N.J.S.A. 40:55D-70(d)(1). In addition, because the proposed driveway will reduce *420 the buffers between the nonconforming use and a conforming use, presumably intensifying the discordance between the uses, a variance under N.J.S.A. 40:55D-70(d)(2) will be necessary unless the zoning authority determines that the intensification of the nonconformity is insubstantial.

I.
The material facts are not in dispute. In 2002, defendant, The General's Group (General's), sought to develop property in Little Ferry to build a hotel. General's proposed to merge several existing lots into two new lots, Lots 8.01 and 8.02, and to construct the hotel on the waterfront of Lot 8.02. Lot 8.02 has no highway access. Accordingly, General's also proposed building a driveway on Lot 8.01 that would continue across a corner of an adjacent lot, Lot 11, which is owned by the same principals that own General's. It is the proposed driveway across Lot 11 that will provide the hotel with highway access.
All the lots are located in the B-H Highway and Regional Business Zone (B-H Zone). Only two uses are permitted in the B-H Zone:
a. Regionally oriented retail shopping centers consisting of integrated development of such uses as retail stores and shops housed in an enclosed building or buildings and utilizing such common facilities as customer parking areas, pedestrian walks, truck loading and unloading space, utilities and sanitary facilities and gasoline filling stations.
b. Theaters and auditoriums.
[Borough of Little Ferry, N.J., Land Use Regulations, ch. XXXV, § 35-112.2 (2010) [hereinafter Little Ferry Code].]
The Little Ferry Code also provides for four conditionally permitted uses in the B-H Zone:
1. Professional, business and governmental offices.
2. Banks and savings-and-loan institutions.
3. Post offices.
4. Hotels and motels.
[Id. at § 35-112.3(a).]
The Little Ferry Code does not address driveways, access roads, or the like as permitted uses or conditionally permitted uses in the B-H Zone. It defines an accessory use as "a use which is customarily incidental and subordinate to the principal use of a lot or a building and which is located on the same lot." Id. at § 35-103(b). "Lot" is defined as
one (1) or more contiguous parcels of land united by a common interest or use, considered as a unit, occupied by a principal building or use and its accessory buildings and uses, if any, including the open spaces on such unit of land. It may or may not coincide with the deed description thereof or the boundaries of the same as shown on the Tax Assessment Map of the Borough or a map filed for record or otherwise.
[Ibid.]
Further, the Little Ferry Code provides that "[a]ny uses other than those uses permitted by subsection 35-112.1-35-112.4 shall be prohibited without in any way limiting the generality and prohibition of this section." Id. at § 35-112.5.
Lot 11 is nonconforming in two respects. First, it is significantly undersized: the minimum B-H Zone lot size is 80,000 square feet, id. at § 35-112.6; Lot 11 is only 30,223 square feet. The proposed driveway will take up 1,426 square feet of Lot 11, or 4.7% of its total size. Second, Lot 11 houses a pre-existing nonconforming auto-body shop.
In 2002, General's applied for site plan approval and certain variances for Lots *421 8.01 and 8.02. The Little Ferry Planning Board (Board)[1] approved the application in 2003, over plaintiff Donald Nuckel's objection. The approval was subject to the condition, among others, that General's break ground within one year, which it did not do. Nuckel challenged that approval by filing an action in lieu of prerogative writs. In 2006, the trial court remanded the matter to the Board to: (1) consider whether it would have approved the plan without the condition that General's break ground within one year of the approval; (2) permit General's to file an application for site plan approval on Lot 11; and (3) allow the Board to consider site plan approval of a riverfront walkway on Lot 8.02 as required by the New Jersey Department of Environmental Protection. Nuckel appealed and the Appellate Division affirmed in an unpublished opinion. We denied certification. Nuckel v. Borough of Little Ferry Planning Bd., 193 N.J. 277, 937 A.2d 978 (2007).
In June 2007, General's filed two revised applications, one for site plan approval for the riverfront walkway and one for site plan approval for Lot 11. In May 2008, the recently-constituted Board, composed of former and newly-appointed members, determined that it would have approved the application even without the one-year condition, granted the application for site plan approval for Lot 11, and approved the riverfront walkway. The new board members did not certify that they had read the transcripts or listened to the tapes from the proceedings on the original application in 2003. At the meeting, counsel for the Board responded to a board member's suggestion about "greenery" by limiting the Board's consideration to the issues of ingress and egress.
In July 2008, Nuckel filed another action in lieu of prerogative writs. In December 2008, the trial court upheld the Board's actions with one exceptionthe site plan approval for Lot 11. In that respect, the court determined that two variances were necessary under the MLUL: (1) a use variance, N.J.S.A. 40:55D-70(d)(1), because the driveway would constitute a new principal use on the undersized lot; and (2) a variance to permit expansion of a nonconforming use, N.J.S.A. 40:55D-70(d)(2), because the proposed driveway would cause "a constriction and a diminution of the lot" and, thereby, shrink the buffer zones and expand the nonconforming auto-body shop. The trial court also remanded the matter to the Board for a broader consideration of the site plan approval because it concluded that the Board's counsel had improperly narrowed the inquiry by limiting consideration to issues of ingress and egress.
General's appealed and Nuckel cross-appealed. The Appellate Division affirmed in part, reversed in part, and remanded for further proceedings. The panel reversed and remanded the matter because the new Board members did not certify that they had read the transcripts of the prior proceedings as required by N.J.S.A. 40:55D-10.2. The panel also reversed the trial court's determination that variances were necessary for Lot 11, concluding that: (1) the driveway was essentially "neutral" and, therefore, did not constitute a new primary use for which a (d)(1) variance would be required; and (2) even if the driveway expanded the nonconforming use by reducing its buffer zone, the expansion would be de minimis,[2] such that it would not require *422 a (d)(2) variance. The panel affirmed the balance of the trial court's decision.
Nuckel petitioned and General's cross-petitioned for certification. On September 8, 2010, we granted both petitions. Nuckel v. Borough of Little Ferry Planning Bd., 203 N.J. 438, 3 A.3d 1227 (2010). We now affirm in part and reverse in part.

II.
Nuckel argues that the proposed driveway on Lot 11 requires a use variance under N.J.S.A. 40:55D-70(d)(1) because the Little Ferry Code does not allow multiple principal uses on a lot and the driveway is not an accessory use. In addition, he contends that a variance to expand a nonconforming use under N.J.S.A. 40:55D-70(d)(2) is required. In response, General's counters that no variances are required for the driveway because it is an accessory use, it is de minimis, and it does not affect the predominant use of the lot.[3]
General's cross-petition contends that the Appellate Division erred by (1) requiring new board members to certify that they read the transcripts from the meetings of the original 2003 application and (2) ordering a remand to the Board for fuller consideration of the site plan application. In opposition, Nuckel relies on the reasoning of the Appellate Division.

III.
The authority of a public entity to plan and zone and, in so doing, to impose conditions on a party's use of its property, is a delegation of the police power. Riggs v. Twp. of Long Beach, 109 N.J. 601, 610, 538 A.2d 808 (1988) ("Municipalities do not possess the inherent power to zone, and they possess that power, which is an exercise of the police power, only insofar as it is delegated to them by the Legislature."). Because the planning and zoning power stems from legislative allowance, it must be exercised in strict conformity with the delegating enactmentthe MLUL. Ibid.; see also Kode Harbor Dev. Assocs. v. Cnty. of Atl., 230 N.J.Super. 430, 440, 553 A.2d 858 (App.Div.1989) ("[A] county's powers are restricted to those granted to it by the Legislature.").
Of particular importance in this case is the power of the Board to grant or deny a use variance. A use variance, as the term implies, permits a use of land that is otherwise prohibited by the zoning ordinance. Coventry Square, Inc. v. Westwood Zoning Bd. of Adjustment, 138 N.J. 285, 287, 650 A.2d 340 (1994); 3 Anderson's American Law of Zoning § 20.06 at 425 (Kenneth H. Young ed., 4th ed. 1996). N.J.S.A. 40:55D-70(d) provides, in relevant part, that the Board may:
In particular cases for special reasons, grant a variance to allow departure from regulations pursuant to article 8 of this act to permit: (1) a use or principal structure in a district restricted against such use or principal structure, (2) an expansion of a nonconforming use....
The legislative preference for land use planning by ordinance rather than by variance is reflected in the "special reasons" requirement in N.J.S.A. 40:55D-70(d), which has been described as follows:
Our case law recognizes three categories of circumstances in which the "special *423 reasons" required for a use variance may be found: (1) where the proposed use inherently serves the public good, such as a school, hospital or public housing facility, see Sica v. Bd. of Adjustment of Wall, 127 N.J. 152, 159-60 [603 A.2d 30] (1992); (2) where the property owner would suffer "undue hardship" if compelled to use the property in conformity with the permitted uses in the zone, see Medici v. BPR Co., 107 N.J. 1, 17 n. 9 [526 A.2d 109] (1987); and (3) where the use would serve the general welfare because "the proposed site is particularly suitable for the proposed use." [Smart SMR v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 323, 704 A.2d 1271 (1998)] (quoting Medici, supra, 107 N.J. at 4 [526 A.2d 109]).
[Saddle Brook Realty, L.L.C. v. Twp. of Saddle Brook Zoning Bd. of Adjustment, 388 N.J.Super. 67, 76, 906 A.2d 454 (App.Div.2006).]
That preference is likewise given voice in the so-called negative criteria set forth in N.J.S.A. 40:55D-70:
No variance or other relief may be granted under the terms of this section, including a variance or other relief involving an inherently beneficial use, without a showing that such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.
As is evident, the burden on a variance applicant is not insignificant.
In this case, the applicant was relieved of that burden over the objections of Nuckel. Accordingly, the issue before us is not whether a variance was properly granted or denied, but whether one was needed in the first instance. That is purely a question of law arising under the MLUL and the Little Ferry Code and is therefore subject to de novo review. Fallone Props., L.L.C. v. Bethlehem Twp. Planning Bd., 369 N.J.Super. 552, 561, 849 A.2d 1117 (App.Div.2004).

IV.
Nuckel first argues, and General's apparently concedes, that the Little Ferry Code permits only one principal use on a lot. As noted earlier, the Little Ferry Code defines a "Lot" as "one (1) or more contiguous parcels of land united by a common interest or use, considered as a unit, occupied by a principal building or use and its accessory buildings and uses, if any, including the open spaces on such unit of land." Little Ferry Code § 35-103(b).
In Financial Services, L.L.C. v. Zoning Board of Adjustment of Little Ferry, 326 N.J.Super. 265, 741 A.2d 121 (App.Div. 1999), the Appellate Division interpreted that language to prohibit more than one principal use on a lot. Id. at 273-75, 741 A.2d 121; see also William M. Cox et al., New Jersey Zoning and Land Use Administration § 10-1 at 273 (2011) (stating that "very often zoning ordinances will prohibit more than one principal use on the same lot").
In the aftermath of Financial Services, the Board did not amend or otherwise alter the language at issue in this case. We take it from that acquiescence that the Financial Services interpretation is what the Board intended in enacting the definition of "[l]ot" that is at issue here. See Tlumac v. High Bridge Stone, 187 N.J. 567, 573, 902 A.2d 222 (2006); State v. Chapland, 187 N.J. 275, 291, 901 A.2d 351 (2006); Asbury Park Press, Inc. v. City of Asbury Park, 19 N.J. 183, 190, 115 A.2d 564 (1955) (construction of statute by courts supported by long acquiescence on part of legislature or by continued use of *424 same language is evidence that such construction accords with legislative intent); see also AMN, Inc. of N.J. v. Tp. of S. Brunswick Rent Leveling Bd., 93 N.J. 518, 524-25, 461 A.2d 1138 (1983) (holding municipal zoning ordinances judicially construed under standards applicable to statutory construction); 1A Norman J. Singer, Sutherland Statutory Construction § 30.06 (5th ed. 1992) (same).
With that as a backdrop, Nuckel contends that because Lot 11 already has a principal use (the nonconforming auto-body shop), a second use is prohibited and, thus, a (d)(1) variance is required. General's advances alternative counterarguments: (1) that the driveway is not, in fact, a new principal use, but should be considered accessory to the hotel on Lot 8.02 because it will be used to access the hotel; and (2) that, in any event, it will not change the primary use on Lot 11, thus obviating the need for a (d)(1) variance.
A driveway is neither an expressly permitted use nor a permitted conditional use in the B-H Zone. Little Ferry Code §§ 35-112.2, -112.3(a). That is likely because, as a rule, as General's argues, a driveway is considered an accessory use. Mountain Hill, L.L.C. v. Zoning Bd. of Adjustment of Middletown, 403 N.J.Super. 210, 243, 958 A.2d 42 (App.Div.2008) ("Driveways are so ineluctably incidental to any main structure and so customary for all structures that they are permitted accessory structures and uses in every zone."), certif. denied, 197 N.J. 475, 963 A.2d 844 (2009); Wolf v. Zoning Bd. of Adjustment of Park Ridge, 79 N.J.Super. 546, 550-51, 192 A.2d 305 (App.Div.1963) ("[L]and used as a means of access to ... a business[ ] is in a use accessorial to the business and thus is itself in legal contemplation [of] being used for the business purpose in question."). Further, there is commentary to the effect that a use may be characterized as accessory to a use on another lot. See Cox, supra, § 10-5 (discussing Angel v. Bd. of Adjustment of Franklin, 109 N.J.Super. 194, 262 A.2d 890 (App.Div.1970)).
However, the Little Ferry Code in this case carries with it a caveat in its definition of an accessory use, i.e., that it is "a use which is customarily incidental and subordinate to the principal use of a lot or a building and which is located on the same lot." Little Ferry Code § 35-103(b) (emphasis added); see 2 Rathkopf's The Law of Planning & Zoning § 33:6 (Edward H. Ziegler, Jr. ed., 27th ed. 2011) ("Many zoning ordinances expressly limit accessory uses `to the same lot' as the principal use or structure."). By that language, the Little Ferry Code disposes of General's argument insofar as it precludes the characterization of a driveway on Lot 11 as accessory to the hotel on Lot 8.02.
That said, if it is not accessory, what is the nature of the driveway? We conclude that it must be a new principal use. To be sure, as General's urges, "[a] driveway in itself is neutral." Beckmann v. Teaneck Tp., 6 N.J. 530, 536, 79 A.2d 301 (1951). However, that neutrality only allows a driveway to "take[ ] color from the uses permitted by the zoning ordinance." Ibid. It does not prevent a driveway from constituting a new "use" in and of itself. General's argument, at best, would allow the driveway to be characterized as a new principal hotel use, but not an accessory use. Because the Little Ferry Code prohibits more than one principal use, a (d)(1) variance is required.
In reaching a contrary conclusion, the Appellate Division apparently relied on the fact that only a "small portion" of the driveway will cross Lot 11. We disagree, not over the characterization of the size of the proposed driveway, on which we take no position, but over the introduction of a *425 de minimis notion into the N.J.S.A. 40:55D-70(d)(1) analysis. Although we have applied the de minimis rationale in connection with an expansion of a nonconforming use under N.J.S.A. 40:55D-70(d)(2), see Town of Belleville v. Parrillo's, Inc., 83 N.J. 309, 316, 416 A.2d 388 (1980), we have never done so in considering the need for a use variance under N.J.S.A. 40:55D-70(d)(1) to permit an otherwise prohibited use.[4] There is good reason for that. Where, as here, the zoning ordinance permits only one principal use, the addition of an entirely new principal use is prohibited and, by its very nature, cannot be inconsequential.
We likewise disagree with the Appellate Division's suggestion that, because it is not "feasible" to place the proposed driveway elsewhere, a variance is not required. Although access may be a reason for granting a variance, it is not a justification for dispensing with one. See 3 Rathkopf's, supra, § 58.1 (describing variances as "means of correcting the occasional inequities that are created by general zoning ordinances"). In sum, we agree with Nuckel that a (d)(1) variance is required.

V.
Nuckel also asserts that the proposed driveway on Lot 11 requires a variance to expand a nonconforming use under N.J.S.A. 40:55D-70 (d)(2).

A.
A nonconforming use is "a use or activity which was lawful prior to the adoption, revision or amendment of a zoning ordinance, but which fails to conform to the requirements of the zoning district in which it is located by reasons of such adoption, revision or amendment." N.J.S.A. 40:55D-5. Under the MLUL, nonconforming uses "may be continued upon the lot or in the structure so occupied." N.J.S.A. 40:55D-68. However, because of their incompatibility with the "objectives of uniform zoning, the courts have required that consistent with the property rights of those affected and with substantial justice, they should be reduced to conformity as quickly as is compatible with justice." Belleville, supra, 83 N.J. at 315, 416 A.2d 388.
"The method generally used to limit nonconforming uses is to prevent any increase or change in the nonconformity." Id. at 316, 416 A.2d 388. Nevertheless, nonconforming uses may lawfully be enlarged by resorting to the variance procedure. As we said in Grundlehner v. Dangler, 29 N.J. 256, 269, 148 A.2d 806 (1959):
Since a variance may, upon a proper showing of special reasons within N.J.S.A. 40:55-39(d), be granted to create a new nonconforming use in a residential zone it may clearly be granted to enlarge a preexisting nonconforming use; it is entirely evident that a limited extension of a preexisting professional office, gasoline station, funeral home, shopping center or other business activity in a residential zone, will ordinarily be less likely to involve substantial impairment of the zoning plan than will the creation of a wholly new use of such nature. In Monmouth Lumber Co. v. Ocean [Tp.], [9 N.J. 64, 77, 87 A.2d 9 (1952)], Justice Burling expressly noted *426 for this court that "a request for an enlargement of a nonconforming use is a request for a variance" which may be initiated under N.J.S.A. 40:55-39(d) or under other pertinent provisions of the statute.
Nonconforming uses are not to be "enlarged as of right except where the change is so negligible or insubstantial that it does not warrant judicial or administrative interference." Belleville, supra, 83 N.J. at 316, 416 A.2d 388.

B.
This is not a classic expansion case involving an upgrade, addition, or change in the nonconforming use. The proposed driveway will not lead to the nonconforming auto-body shop, nor will it be, in any other way, accessory to it.
However, there are other ways in which a nonconformity can be intensified. In Razberry's, Inc. v. Kingwood Township Planning Board, 250 N.J.Super. 324, 593 A.2d 1264 (App.Div.1991), for example, the Appellate Division considered "whether a property owner may subdivide a lot occupied by a nonconforming use, thereby reducing the size of the property devoted to that use, without obtaining a use variance pursuant to [N.J.S.A. 40:55D-70(d)(2)]." Id. at 325, 593 A.2d 1264. In ruling that it could not, the court stated:
The typical cases in which courts have found a prohibited increase or change of a nonconforming use have involved an expansion of the facilities containing the use, see, e.g., Grundlehner v. Dangler, 29 N.J. 256, 148 A.2d 806 (1959); Ranney v. Istituto Pontificio Delle Maestre Filippini, 20 N.J. 189, 119 A.2d 142 (1955), or an intensification of the use, see, e.g., Town of Belleville v. Parrillo's, Inc., supra; Hantman v. Township of Randolph, 58 N.J.Super. 127, 155 A.2d 554 (App.Div.1959), certif. denied, 31 N.J. 550, 158 A.2d 451 (1960). However, a reduction in the size of the property occupied by a nonconforming use, with a resulting decrease in the buffers between conforming and nonconforming uses, is just as likely to increase the conflict between a nonconforming use and surrounding conforming uses as an expansion of the facility containing the nonconforming use or an intensification of that use. Therefore, a reduction in the size of the property occupied by a nonconforming use may result in a substantial increase in the nonconformity.
[Id. at 327, 593 A.2d 1264.]
The court went on to provide an illustration of its theory:
The potential impact of a subdivision of property containing a nonconforming use may be illustrated by considering a nonconforming factory located in the middle of a fifty acre parcel in a residential zone. Despite the strong discordance between industrial and residential uses, the size of such a parcel would provide a substantial buffer and thus mitigate the detrimental impact of the nonconforming use upon the neighborhood. But if the parcel were subdivided into forty-five one acre residential lots surrounding a five acre lot on which the factory continued to operate, the buffers between the conforming and nonconforming uses would dramatically decrease and the detrimental impact of the nonconforming use would become more severe.
[Id. at 328, 593 A.2d 1264.]
Razberry's concluded that the reduction in the buffer zones through subdivision would enhance the discordant effect of the nonconforming use on surrounding conforming uses and that a (d)(2) variance was thus required. Ibid. We are satisfied that that is a correct approach. The question is *427 how those principles align with the facts in this case.
To be sure, this matter is not on all fours with Razberry's. Razberry's actual holding was that "a use variance is required to continue a nonconforming use when the size of the property containing the use is reduced by a subdivision" because a subdivision creates new lots and a nonconforming use may only be "continued upon the lot ... so occupied." Id. at 326-27, 593 A.2d 1264 (quoting N.J.S.A. 40:55D-68) (internal quotation marks omitted). Here, Lot 11 is not to be subdivided. Nor will the driveway reduce the size of Lot 11: Lot 11 was 30,223 square feet when this case began and will remain 30,223 square feet regardless of whether the proposed driveway is constructed.[5] Thus, the buffer between the nonconforming auto-body shop and the surrounding conforming lots will remain the same.
However, if the proposed driveway is permitted, it will itself become a new conforming use. See Stop & Shop Supermarket Co. v. Bd. of Adjustment of Springfield, 162 N.J. 418, 432, 744 A.2d 1169 (2000) (stating that "[i]n essence, the use or structure allowed [by variance] becomes a conforming use" (quoting Indus. Lessors, Inc. v. City of Garfield, 119 N.J.Super. 181, 183, 290 A.2d 737 (App.Div.), certif. denied, 61 N.J. 160, 293 A.2d 390 (1972))). That said, what will occur will be analogous to Razberry's insofar as the buffer between the pre-existing nonconforming auto-body shop and the conforming use will be reduced. As a result, the trial judge, citing Razberry's, concluded that that decrease in the buffer zone would result in an expansion of the nonconforming use, requiring a (d)(2) variance.
The Appellate Division agreed that the buffer zone would be reduced, but disagreed that the reduction required a variance:
The issue that must be resolved, however, is whether the expanded use from the reduced buffer zone can fairly be characterized as a de minimis expansion of the auto shop, which is the non-conforming use.... We are satisfied that the proposal to use one small corner of Lot 11, at a point far removed from both the auto body shop and other property owners, as an access route for the hotel's driveway can fairly be characterized as such a de minimis expansion as not to require an application for a use variance.

C.
It is well established that the increase in a nonconforming use is subject to a de minimis analysis. Belleville, supra, 83 N.J. at 316, 416 A.2d 388; Grundlehner, supra, 29 N.J. at 263, 148 A.2d 806. Indeed, numerous cases have applied that standard to permit changes in a nonconforming use without requiring a variance where the policy of containment of such uses is not offended. See, e.g., Lehen v. Atl. Highlands Zoning Bd. of Adjustment, 252 N.J.Super. 392, 399-400, 599 A.2d 1283 (App.Div.1991) (holding construction to change ratio of rooms to apartments in nonconforming rooming and boarding house "alone is not sufficient ... [to] require ... variance relief"); Inst. for Evaluation & Planning, Inc. v. Bd. of Adjustment of Freehold, 270 N.J.Super. *428 396, 402-03, 637 A.2d 235 (Law Div.1993) (change from nonconforming single family use to group home for children does not require variance); State v. Wagner, 81 N.J.Super. 206, 210-12, 195 A.2d 224 (Cty. Ct.1963) (increase in number of tenants in one apartment of house converted to two apartments "is only an increase in the `intensity' or `degree' of use and cannot be said to represent a substantial, and thereby unlawful, enlargement or extension of defendant's nonconforming use").
In other cases, the proposed changes were found to be substantial. See, e.g., Belleville, supra, 83 N.J. at 316, 318, 416 A.2d 388 (conversion of restaurant to discotheque required variance); Conselice v. Borough of Seaside Park, 358 N.J.Super. 327, 335-36, 817 A.2d 988 (App.Div.2003) (expansion of residential portion of mixed-use property where mixed use was prohibited required variance); Hantman, supra, 58 N.J.Super. at 135-38, 155 A.2d 554 (change from summer bungalow to year-round occupancy required variance); see generally Cox, supra, §§ 11-5, -6.
As the cases reveal, the question of whether an expansion or an intensification of a nonconforming use is substantial enough to require a (d)(2) variance is a fact-sensitive one which ought, in the first instance, to be considered by the Board. Our review of the Board's resolution suggests that it believed that only if the size of Lot 11 were diminished by subdivision, as in Razberry's, could the nonconforming use on it be considered to have been expanded. That is too crabbed a view. It is the actual diminution in the buffer zone between a nonconforming use and surrounding conforming uses, and not why it occurred, that is the centerpiece of the analysis. In such a case, the focus should "be on the quality, character and intensity of the use, viewed in [its] totality and with regard to [its] overall effect on the neighborhood and the zoning plan." Belleville, supra, 83 N.J. at 314, 416 A.2d 388.
In an abundance of caution and because it is not clear from this record that the Board understood its obligation in connection with N.J.S.A. 40:55D-70(d)(2), the issue should be addressed during the remand proceeding. At that time, the Board should consider whether the new proximity between the nonconforming auto-body shop and the proposed driveway will enhance the effect of the nonconformity. In addition, in determining whether a (d)(2) variance is required, the Board should assess whether the proposed driveway will be an insignificant alteration in the status quo.[6]

VI.
We affirm the remainder of the Appellate Division's decision, which is the subject of General's cross-petition. The new board members were required to revisit the entirety of the site plan approval because the condition that was declared illegal was not severable under the 2003 resolution, which provided:
In the event any condition is held to be invalid, unenforceable, or unlawful, the entire approval shall be unenforceable. It is the intent of the Board that the relief granted herein not be approved if any condition is invalid, and that the conditions are not severable from any variances or relief granted herein.
*429 In doing so, the new board members were constrained by N.J.S.A. 40:55D-10.2, which provides:
A member of a municipal agency who... was not a member of the municipal agency at that time, shall be eligible to vote on the matter upon which the hearing was conducted, notwithstanding his absence from one or more of the meetings; provided, however, that such board member has available to him the transcript or recording of all of the hearing from which he ... was not a member, and certifies in writing to the board that he has read such transcript or listened to such recording.
No such certifications issued from the new board members. Thus, the Appellate Division correctly ordered a remand to the Board so that any members who were not present at the 2003 proceedings could read the transcripts of those proceedings, certify in writing that they had done so, and then vote.
In addition, insofar as the Board believed itself to be limited to ingress and egress issues in ruling on the site plan approval application, it was in error. The MLUL defines a "[s]ite plan" as
a development plan of one or more lots on which is shown (1) the existing and proposed conditions of the lot, including but not necessarily limited to topography, vegetation, drainage, flood plains, marshes and waterways, (2) the location of all existing and proposed buildings, drives, parking spaces, walkways, means of ingress and egress, drainage facilities, utility services, landscaping, structures and signs, lighting, screening devices, and (3) any other information that may be reasonably required in order to make an informed determination pursuant to an ordinance requiring review and approval of site plans by the planning board adopted pursuant to article 6 of this act.
[N.J.S.A. 40:55D-7.]
The Little Ferry Code contains a provision on site plan review as well. Little Ferry Code § 35-501. According to the Little Ferry Code, the Board, when reviewing a site plan application, is required to:
take into consideration the public health, safety and welfare, the comfort and convenience of the public in general and of the residents of the immediate neighborhood in particular, and may prescribe appropriate conditions and safeguards as may be required in order that the result of its action may, to the maximum extent possible, further the expressed intent of this chapter and the accomplishment of the following objectives in particular:
1. Maximum safety and convenience of vehicular and pedestrian traffic by ensuring that all driveways and walkways are adequate but not excessive in number; adequate in width, grade, alignment and visibility; and suitably located, particularly with respect to their connections with public streets.
2. The provision of adequate access to all proposed structures, equipment or material on the site for fire and police protection.
3. The provision of adequate off-street parking to accommodate the vehicles of employees or tenants or persons connected with or visiting the use and to obviate the parking of such vehicles in public streets.
4. A site layout in which the illumination of the site and all uses upon it would have no adverse effect upon adjacent properties.
5. Landscaping or other screening of the site in a manner which is in character with that generally prevailing in the neighborhood and which provides reasonable *430 screening at all seasons of the year of all playgrounds, parking areas and service areas from the view of adjacent residential properties and streets.
6. In applicable cases, a drainage system and layout which would afford the best solution to any drainage problems.
7. The prevention of any alteration to the natural land contours or the erection of any structure that would increase possible flood heights or divert floodwaters to other properties.
[Id. at § 35-501(b).]
As is evident, neither the MLUL nor the Little Ferry Code limits the Board's consideration to ingress and egress. Consequently, the Appellate Division's decision to remand the matter to the Board for full consideration of the site plan was unexceptionable.

VII.
In sum, on remand the Board should (1) determine whether General's has satisfied the criteria for a variance under N.J.S.A. 40:55D-70(d)(1); (2) consider whether the proposed driveway will merely be a de minimis expansion of the nonconforming use or will require a variance under N.J.S.A. 40:55D-70(d)(2); (3) require any new board members to read the transcripts of prior meetings, and certify that they have done so before voting on the site plan approval; and, (4) give full consideration of the site plan before voting on it.

VIII.
The judgment of the Appellate Division is affirmed in part and reversed in part. The matter is remanded to the Board for consideration of the site plan application in accordance with the principles to which we have adverted.
For affirmance, reversal and remandmentChief Justice RABNER, and Justices LONG, LaVECCHIA, ALBIN, RIVERA-SOTO and HOENS6.
OpposedNone.
NOTES
[1] Little Ferry has authorized its Planning Board to exercise the powers of a zoning board of adjustment, i.e., to grant variances. See N.J.S.A. 40:55D-25(c); Little Ferry, N.J., Ordinance 1067-4-02 (March 12, 2002).
[2] De minimis connotes "[t]rifling; minimal" or "([o]f a fact or thing) so insignificant that a court may overlook it in deciding an issue or case." Black's Law Dictionary 496 (9th ed. 2009).
[3] Nuckel argued before the trial court and Appellate Division that a lot area "C" variance, N.J.S.A. 40:55D-70(c), was required because Lot 11 is significantly undersized, but did not pursue that argument before this Court.
[4] As far as our research reveals, neither have our sister jurisdictions. See, e.g., Robert S. Ryan & John E. Ryan, 2 Pennsylvania Zoning Law & Practice §§ 6.6.1 to 6.6.11 (2010) (compiling Pennsylvania de minimis variance cases, noting it is "difficult to conceive of a use variance that really would be de minimis," and concluding "the cases to date have held uniformly that a variance in a use provision of a zoning ordinance cannot be de minimis").
[5] Although Lot 11 will not be changing in size, construction of the proposed driveway will take up a portion of previously unused space on the lot. In those circumstances, the question is not whether the nonconforming use will be expanded, requiring a (d)(2) variance, but whether the proposed driveway will cause an impermissible "increase in the permitted floor area ratio" and, thus, require a (d)(4) variance. N.J.S.A. 40:55D-70 (d)(4). This issue was not raised before the Court.
[6] On the remand, the Board should determine whether the auto-body shop is actually a pre-existing nonconforming use or an illegal one as Nuckel claims. That issue was never definitively addressed by the courts below. See Bonaventure Int'l, Inc. v. Borough of Spring Lake, 350 N.J.Super. 420, 432-33, 795 A.2d 895 (App.Div.2002).