**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-4504-14T3
            A-4637-14T3
            A-4763-14T3

SHIPYARD ASSOCIATES, L.P.,

    Plaintiff-Respondent,

v.

HOBOKEN PLANNING BOARD,

    Defendant-Appellant.

_____

CITY OF HOBOKEN,

    Plaintiff-Appellant,

v.

SHIPYARD ASSOCIATES, L.P.,

    Defendant-Respondent.

_____

SHIPYARD ASSOCIATES, L.P.,

    Plaintiff-Respondent,

v.

HUDSON COUNTY PLANNING BOARD
and HUDSON COUNTY BOARD OF
CHOSEN FREEHOLDERS,

    Defendants.

_____

Argued February 28, 2017 — Decided August 2, 2017

Before Judges Reisner, Rothstadt and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket Nos. L-4157-12, L-1238-12, L-3278-12.

Dennis M. Galvin argued the cause for appellant Hoboken Planning Board in A-4504-14 (The Galvin Law Firm, attorneys; Mr. Galvin, of counsel; Mr. Galvin and Steven M. Gleeson, on the briefs).

Joseph J. Maraziti, Jr. argued the cause for appellant City of Hoboken in A-4637-14 (Maraziti Falcon, LLP, attorneys; Mr. Maraziti, of counsel; Christopher D. Miller, on the briefs).

Eric S. Goldberg and Craig S. Hilliard argued the cause for intervenor/appellant in A-4763-14 Hudson Tea Buildings Condominium Association, Inc. (Stark & Stark, attorneys; Mr. Goldberg, Mr. Hilliard, and H. Matthew Taylor, on the briefs).

Kevin J. Coakley and Nicole B. Dory argued the cause for respondent Shipyard Associates, L.P. (Connell Foley LLP, attorneys; Mr. Coakley, of counsel; Ms. Dory, Christopher J. Borchert, and Nicholas W. Urciuoli, on the briefs).

Renée Steinhagen argued the cause for amicus curiae Fund for a Better Waterfront (New Jersey Appleseed Public Interest Law Center, attorneys; Ms. Steinhagen, on the brief).

PER CURIAM

These three appeals arise from an application by developer Shipyard Associates, L.P. (Shipyard) to build two additional high-rise residential apartment buildings as part of its planned unit

development (PUD) on the Hoboken waterfront.  After reviewing the record in light of the applicable standard of review, we affirm the orders on appeal in each case.  See Nuckel v. Bor. of Little Ferry Planning Bd., 208 N.J. 95, 102 (2011).

The history of the development dates back to a January 7, 1997 resolution of the Hoboken Planning Board (Planning Board), granting Shipyard preliminary site plan and subdivision approval for the PUD.  As approved, the PUD included several luxury residential high-rise apartment buildings comprising about 1200 units, multiple commercial retail units, parking garages, a park, a waterfront promenade or walkway, and a recreation pier.  The PUD contemplated that Shipyard might also construct a public marina and other amenities.  All of that construction was to take place on Blocks A through F of the site.  On Block G, the PUD was to include three tennis courts and a tennis pavilion, which would be available to the public for a fee, and thirty-seven surface parking spaces.[1]

Shipyard subsequently obtained final site plan and subdivision approvals and built the approved residential high-rises, commercial space, waterfront promenade, park, recreation pier, a marina, a ferry stop, and all other amenities except the

---

[1] We will refer to these amenities collectively as "the tennis courts."

tennis courts. Some of that construction, including the ferry stop and a small increase in the number of residential units, required applications to modify the prior approvals. The Planning Board granted those applications, without challenge.

A controversy ensued, however, when Shipyard applied to the Planning Board on August 25, 2011 for amended preliminary and final site plan approval, seeking permission to build two more residential towers (the Monarch project), comprising seventy-eight units, in lieu of building the tennis courts.[2] Pursuant to N.J.S.A. 40:55D-10.3, Shipyard's application was deemed complete

---

[2] For the proposed tennis court development on Block G, which included construction on a platform extending into the water (the North Platform), Shipyard needed a waterfront development permit and a water quality certificate from the Department of Environmental Protection (DEP). However, the DEP denied Shipyard's application to build the tennis courts. Shipyard then submitted a revised application, seeking DEP's approval to build the two additional high-rises instead. The revised application involved a more extensive reconstruction of the North Platform so it could accommodate the high-rises. After an extensive review of the safety and environmental issues, DEP issued the permits. The City, the Fund for a Better Waterfront, and the Hudson Tea Buildings Condominium Association, Inc., filed an appeal asserting, among other things, that the DEP had given insufficient consideration to possible flooding and other safety concerns. We affirmed the DEP's decision, and the Supreme Court recently denied certification. In re Shipyard Assocs. LP Waterfront Devel. Permit & Water Quality Certificate No. 0905-07-0001.2 WFD 110001, Nos. A-4873-13 and A-5004-13 (App. Div. Feb. 3, 2017), certif. denied, ___ N.J. ___ (2017).

on October 13, 2011,[3] but the application was not scheduled for a hearing until many months later.

In the meantime, on March 2012, the City sued Shipyard in the Law Division (L-1238-12) to enforce the City's purported rights under a December 7, 1997 developer's agreement with Shipyard. Thereafter, on July 10, 2012, the Planning Board refused to consider the merits of Shipyard's application, although Shipyard's attorney and witnesses were present on the scheduled July 10 hearing date and were fully prepared to present the application. Instead of hearing the application, the Board denied it "without prejudice," over Shipyard's vigorous objection, on the theory that the Board lacked jurisdiction to entertain the application while the City's lawsuit was pending. In turn, Shipyard sued the Planning Board (L-4157-12), asserting that the Board's refusal to adjudicate the merits of its application within the statutory timeframe set forth in N.J.S.A. 40:55D-61, resulted in its automatic approval pursuant to that section.[4]

---

[3] The resolution deeming the application complete is not in the parties' appendices; we derive the information from the trial court's January 23, 2014 opinion, and there appears to be no dispute on this point.

[4] The claim should have come as no surprise. Shipyard's attorney had sent multiple letters to the Board's attorney prior to July 10, 2012, putting the Board on notice that N.J.S.A. 40:55D-22(a) obligated the Board to hear Shipyard's application despite the

In a separate action (L-3278-12), Shipyard sued the Hudson County Planning Board (County Board), which had denied, on the merits, Shipyard's application for approval of the Monarch project. Shipyard also sued the Hudson County Board of Chosen Freeholders (Freeholder Board), which had affirmed the County Board's action.[5]

The Law Division eventually consolidated the three lawsuits and issued decisions favorable to Shipyard in all three cases. These appeals followed, and we have consolidated them for purposes of this opinion.

In A-4637-14, the City of Hoboken, and intervenors Fund for a Better Waterfront (FWB) and the Hudson Tea Buildings Condominium Association, Inc. (Hudson Tea),[6] appeal from a June 27, 2013 order

_____

pending litigation, and that a refusal to decide its application on the merits would result in automatic approval under N.J.S.A. 40:55D-61.

[5] The County Board has limited jurisdiction to review land use applications for "land development along county roads or affecting county drainage facilities." N.J.S.A. 40:27-6.6. Its review is "limited for the purpose of assuring a safe and efficient county road system." Ibid. The Freeholder Board has authority to review the County Board's decision. N.J.S.A. 40:27-6.9. Neither of those two entities is participating in these appeals.

[6] Hudson Tea operates a large residential condominium located nearby but not directly on the waterfront. Its apparent concern is that the Monarch project towers will block its residents' water view.

granting summary judgment dismissing the City's complaint seeking to enforce the developer's agreement. In A-4504-14, the Planning Board and the City, as intervenor, supported by amicus curiae FWB, appeal from a February 4, 2014 order, declaring that Shipyard was entitled to automatic approval of its application, and from a May 9, 2014 order denying reconsideration. In A-4763-14, Hudson Tea and amicus curiae FWB challenge a May 21, 2015 order, which overturned both the County Board's resolution disapproving Shipyard's application and the Freeholder Board's resolution affirming the County Board decision, and directed that the application be approved.[7]

I

In A-4637-14, we affirm the June 27, 2013 order dismissing the City's lawsuit against Shipyard, substantially for the reasons stated by the trial judge in his cogent oral opinion issued on June 21, 2013. We agree with the judge that, in Toll Brothers,

---

[7] Although the appeals were not consolidated for briefing purposes, the City included, in its brief on A-4637-14, arguments about automatic approval, which should have been briefed in A-4504-14. The Planning Board's brief in A-4504-14 included arguments about the developer's agreement that should have been briefed in A-4637-14. Likewise, Hudson Tea addressed all of the issues pertaining to each appeal in one brief, filed in A-4763-14. FBW's brief in A-4763-14 also addressed issues pertaining to A-4637-14. Nonetheless, except for issues not raised in the trial court, we have considered all of the parties' arguments. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

<u>Inc. v. Board of Chosen Freeholders of Burlington</u>, 194 <u>N.J.</u> 223 (2008), the Supreme Court clearly held that a developer's agreement cannot be enforced so as to prevent a developer from applying to a planning board for a modification of a previously-issued approval. "A vital aspect of the planning process is the ability of developers to return to the planning board and present evidence that a sufficient change in circumstances exists to warrant a modification of previously imposed conditions. A developer's agreement is not an impediment to such a proceeding." <u>Id.</u> at 256-57.

As the Court explained:

> By its very nature, a developer's agreement is not . . . an independent contractual source of obligation. Indeed, as the developer's agreement in this case expressly declares, its purpose is to help carry out the conditions imposed by the Board . . . .
>
> . . . [A] developer's agreement is an ancillary instrument, tethered to the conditions of approval, and exists solely as a tool for the implementation of the resolution establishing the conditions. Accordingly, if the resolution establishing the conditions remains in effect, the developer's agreement can be enforced. However, if the resolution changes, the developer's agreement enjoys no independent status and must be renegotiated. . . .
>
> To suggest, as the County does, that the developer's agreement should somehow bar Toll Brothers from making the changed circumstances

> application that the MLUL recognizes misconceives the relationship between the conditions and the developer's agreement; it is the developer's agreement that is dependent on the conditions and not vice versa. . . . [W]e do not view the ancillary developer's agreement as a bar to Toll Brothers' application for modification of the resolution setting the conditions of approval.
>
> [Id. at 249-50 (citations omitted).]

Appellants' efforts to distinguish Toll Brothers are patently insubstantial. The above-quoted language is not limited to developers' agreements pertaining to off-site improvements.

We agree with the trial judge that the Municipal Land Use Law (MLUL) signals the Legislature's intent to permit a developer to apply to a planning board to modify the terms of approval of a PUD. See N.J.S.A. 40:55D-45.6(a). In fact, the developer's agreement between Shipyard and the City contemplated possible amendments to the resolutions granting the approvals ("the building plans shall reflect the requirements of the [Board] as contained in its Resolutions . . . and any amendments thereafter . . . .").

We also agree with the trial judge that the merits of an application to modify prior approvals are to be decided by the board, not by a trial court in litigation to enforce the developer's agreement. As in Park Center at Route 35, Inc. v. Zoning Board of Adjustment of Woodbridge Township, 365 N.J. Super.

284 (App. Div. 2004), the Planning Board should have decided whether building the tennis courts was an express condition of its prior approval and, in any event, whether a modification was justified. Consequently, the parties' arguments about the relative merits of Shipyard's application to the Planning Board are irrelevant to this appeal.

The additional contentions raised by the City and the other appellants, including their estoppel arguments, are without sufficient merit to warrant discussion here. R. 2:11-3(e)(1)(E).

II

In A-4763-14, we affirm the May 21, 2015 order, reversing both the County Board's resolution and the Freeholder Board's resolution, and ordering approval of Shipyard's application. For the reasons cogently stated by the trial judge in his May 21, 2015 written opinion, we agree that the County and Freeholder Boards' decisions were arbitrary, capricious, inconsistent with the opinions of the County Board's own engineering consultant, and unsupported by the evidentiary record. Therefore, the trial court reached the correct result in ordering that Shipyard's application be approved. Because the judge's written opinion on this issue is comprehensive, little more discussion is required here.

The County Board's jurisdiction is very limited. Its responsibility is limited to "assuring a safe and efficient county

road system," including drainage issues affecting county roads. N.J.S.A. 40:27-6.6, -6.6(e). See Kode Harbor Dev. Assocs. v. Cty. of Atlantic, 230 N.J. Super. 430, 432 (App. Div. 1989). In this case, the Board had jurisdiction to consider Shipyard's application because the Monarch project bordered Sinatra Drive, a county road. However, the project presented no drainage issues affecting Sinatra Drive or any other county road. Moreover, once Shipyard modified the project's internal road system to eliminate a proposed connection between an internal walkway/emergency roadway (the walkway) and Sinatra Drive, the Board had no jurisdiction over any alleged traffic or emergency access issues concerning the walkway. We agree with the trial judge that the County Board's decision was not supported by the record, and the Freeholder Board's decision was equally arbitrary because it simply adopted the County Board's findings "by reference."

We do not reach the issue of whether Shipyard was entitled to automatic approval of its application to either board. However, we note that, because Shipyard participated in the County Board hearings and only claimed a right to automatic approval after its application was denied, its argument may be barred by the doctrine of laches. See Amerada Hess Corp. v. Burlington Cty. Planning Bd., 195 N.J. 616, 641 n.5 (2008).

Turning to A-4504-14, we affirm substantially for the reasons stated by the motion judge in her thorough written opinions issued on January 23, 2014 and May 9, 2014. We add these comments.

The result in this case is controlled by well established legal principles, set forth in Amerada Hess, supra, 195 N.J. at 616. In that case the Court rejected prior case law that more liberally extended relief to municipal land use boards, and clarified the narrow circumstances in which a board may obtain relief from the automatic approval provisions of the MLUL:

> [I]n the absence of mistake, inadvertence, or other unintentional delay, there should be no such reluctance [to affirm imposition of automatic approval]. Indeed, South Plainfield Properties, L.P. v. Middlesex County Planning Board, 372 N.J. Super. 410 (App. Div. 2004), is emblematic of our view. There the board simply granted itself a six-month delay to review "extenuating" traffic concerns and impacts, and the Appellate Division had no hesitation in holding that the action was "precisely the conduct that the automatic approval provision was designed to prevent." Id. at 419.
>
> That is what the Legislature intended. It has made the policy judgment that timely disposition is of great institutional value such that automatic approval is the proper remedy for delay. Under Manalapan, the statutory timetables are to be strictly enforced; permissive interpretation is unwarranted; and only where delay is inadvertent or unintentional will a public entity be excused from automatic approval.

> [Id. at 636 (citing <u>Manalapan Holding Co. v. Planning Bd. of Hamilton</u>, 92 <u>N.J.</u> 466 (1983)).]

The court also emphasized that an applicant need not show that the board acted in bad faith. <u>Id.</u> at 637. "Where a board fails to act within the statutory limits, even for what it considers 'good' reasons, the statute is violated and automatic approval comes into play. Only where the board establishes that its delay was inadvertent or unintentional can its conduct be excused." <u>Ibid.</u>

In this case, there was nothing inadvertent or unintentional about the Planning Board's action. It was aware of the statutes requiring that it hear Shipyard's application, regardless of the pending litigation, on pain of automatic approval if it did not. <u>See</u> <u>N.J.S.A.</u> 40:55D-10(a); <u>N.J.S.A.</u> 40:55D-22; <u>N.J.S.A.</u> 40:55D-61. Indeed, multiple letters from Shipyard's attorney put the Board on notice of its obligations. Moreover, the transcript of the Board hearing reveals its expressed intent to circumvent the automatic approval statute by "denying" Shipyard's application "without prejudice." However, its expressed legal reasons for doing so, as articulated by the Board attorney, were palpably meritless. <u>Toll Brothers</u> clearly precluded the City from enforcing the developer's agreement, and <u>N.J.S.A.</u> 40:55D-22(a) plainly

obligated the Planning Board to hear Shipyard's application notwithstanding the City's pending lawsuit.[8]

We agree with the motion judge that in denying the application without prejudice, the Board was unlawfully granting itself an extension of time to hear the application, until the City's lawsuit was decided. "We cannot countenance such an end-run around the statute." South Plainfield Props., supra, 372 N.J. Super. at 417. The Board could have heard the application and granted it, conditioned on the outcome of the City's lawsuit. N.J.S.A. 40:55D-22(a). But the Board could not lawfully refuse to hear the application, which is what it did here.[9]

Thus, we agree with the motion judge that Shipyard's application was automatically approved, and that the automatic approval occurred by operation of law when the statutory period set forth in N.J.S.A. 40:55D-61 expired. "[F]ailure of the planning board to act within the period prescribed shall constitute

---

[8] The Planning Board's argument, that the developer's agreement amounted to a deed restriction that stripped the Board of jurisdiction to hear Shipyard's application, is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

[9] As previously noted, we decline to consider arguments not raised in the trial court, including the Board's arguments about an alleged lack of notice pursuant to N.J.S.A. 40:55D-10.4. See Nieder, supra, 62 N.J. at 234. We also decline to consider materials, improperly included in FWB's appendix, which were not part of the trial court record.

approval of the application. . . ." N.J.S.A. 40:55D-61 (emphasis added). At that point, Shipyard obtained the vested rights associated with preliminary and final site plan approval. N.J.S.A. 40:55D-52(a).

The two principal statutes on which our decision rests — N.J.S.A. 40:55D-22(a) and N.J.S.A. 40:55D-61 — represent the Legislature's considered policy judgment that land use applications should be heard promptly and local governments should not give developers the runaround. See Amerada Hess, supra, 195 N.J. at 630; South Plainfield Props., supra, 372 N.J. Super. at 419-20. Like the motion judge, we are bound to honor the Legislature's choice. In this case, implementing those two statutes requires automatic approval of Shipyard's application.

If there is a lesson to be learned from this case, it is that the rule of law is paramount and cannot be sidestepped to avoid deciding unpopular land use applications. As here, failure to follow the law may insure the success of an application that local objectors vigorously oppose. We appreciate that it may be difficult for planning board members, who are unpaid appointees, to stand firm in the face of vocal objectors and carry out their statutory duty. We have read the transcript of the July 10, 2012 Board hearing, in which objectors were interrupting the proceedings and shouting, "we want tennis courts." However, the

Planning Board was obligated to hear Shipyard's application, no matter how controversial it was.

Ironically, had the Board considered the application on its merits, it had authority to deny the application unless Shipyard's evidence justified modifying the original PUD approval which included the tennis courts. But, because the Planning Board yielded to public pressure, and refused to hear Shipyard's application, the result is automatic approval of the application.

Finally, we note that the application Shipyard submitted, and which was automatically approved, promises that Shipyard will construct a publicly accessible waterfront walkway around the perimeter of the Monarch project development. Shipyard's counsel has represented that Shipyard must build and maintain the publicly accessible waterfront walkway as a condition of DEP's approval of its permits (see supra note 2). We likewise construe that commitment to be a condition of the automatic approval.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4504-14T3